UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETER W., | ) |
| Plaintiff, | ) ) ) |
| | ) No. 21-cv-1552 |
| v. | ) ) Magistrate Judge Susan E. Cox |
| KILILO KIJAKAZI, Commissioner of the Social Security Administration, | ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Peter W.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Title II disability insurance benefits under the Social Security Act. The Parties have filed cross motions for summary judgment.[2] For the reasons detailed below, Plaintiff's Motion for Summary Judgment (dkt. 14) is GRANTED and the Commissioner's motion (dkt. 19) is DENIED. The case is remanded for further proceedings consistent with this opinion.

1.  **Social Security Regulations and Standard of Review**

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

[2] The Court has construed "Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security" (dkt. 14) as a motion for summary judgment.

*Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C. § 405(g).

**2.      Procedural Background and ALJ Decision**

On July 11, 2018, Plaintiff protectively filed claims for both Title II disability insurance benefits and Title XVI supplemental security income, each alleging a May 11, 2018 disability onset date. (Administrative Record ("R.") R. 13.) Plaintiff's claims were denied initially and upon reconsideration, after which Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) Subsequently, on September 29, 2020, the ALJ issued an unfavorable decision finding Plaintiff not disabled under the Act. (R. 13-25.) On January 14, 2021, the Appeals Council denied Plaintiff's request for review (R. 1-6), leaving the ALJ's decision as the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

The ALJ's decision followed the five-step analytical process required by 20 C.F.R. § 416.920. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of May 11, 2018. (R. 16.) At Step Two, the ALJ concluded Plaintiff had the severe impairments of cardiomyopathy, atrial fibrillation, congestive heart failure, status post implantable cardioverter-defibrillator (ICD) placement, and obesity. (*Id.*) The ALJ determined Plaintiff's diabetes

mellitus, sleep apnea, and hypertension were nonsevere. (*Id.*) The ALJ also concluded that Plaintiff's "allegations of insomnia, anxiety, headache, arm, or vision conditions did not give rise to any medically determinable impairment." (*Id.*) At Step Three, the ALJ concluded Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of a listed impairment. (R. 16-17.) The ALJ next found Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following restrictions: lifting/carrying 20 pounds occasionally and 10 pounds frequently; sitting for 6 hours and standing/walking for 2 hours in an 8-hour workday; occasionally climbing of ramps and stairs, but never ladders, ropes, or scaffolds; occasionally balancing, stooping, kneeling, crouching, or crawling; no exposure to unprotected heights or dangerous heavy machinery; no more than occasional exposure to extreme temperatures and humidity (but temperature-controlled indoor work environments are okay); and no work around pulmonary irritants. (R. 17-18.) At Step Four, the ALJ concluded Plaintiff was unable to perform his past relevant work. (R. 22-23.) At Step Five, the ALJ found a single alternative job (Purchasing Clerk, DOT # 249.367-066) that exists in the national economy that Plaintiff can perform, considering his age, education, work experience, and RFC. (R. 23-24.) These findings led the ALJ to conclude Plaintiff is not disabled as defined by the Social Security Act. (R. 25.)

**3.      Discussion**

Plaintiff raises several challenges to the ALJ's decision, but the Court finds only one need be addressed since it is enough, by itself, to require a remand. *See*, *e.g.*, *Melvin J. v. Kijakazi*, 2022 WL 2952819, at *5 (N.D. Ill. July 26, 2022); *Torres v. Kijakazi*, 2022 WL 843931, at *3 (E.D. Wis. Mar. 22, 2022). Plaintiff asserts the ALJ erred in considering his non-compliance with treatment when discounting his subjective complaints, without adequately considering the reasons for it. The Court agrees, and remands on this basis.

While an ALJ can consider a claimant's non-compliance with treatment in evaluating a

claimant's subjective statements and credibility surrounding those statements, the Seventh Circuit has held that an ALJ must not draw any inferences about a claimant's condition from their non-compliance unless the ALJ has explored the claimant's explanations for the non-compliance. *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008); *see also* SSR 16-3p ("We will not find an individual's symptoms inconsistent with the evidence in the record…without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints… we will consider and address reasons for not pursuing treatment…[and] explain how we considered the individual's reasons in our evaluation of the individual's symptoms."). Additionally, inability to afford treatment may be considered a good reason for non-compliance. *Id*.

Here, in assessing Plaintiff's subjective allegations, the ALJ found "[t]he records also noted the claimant reported medication non-compliance." (R. 19.) Later, the ALJ refers to this same finding when she again notes "the record included evidence of medication non-compliance, as discussed above." (R. 22.) The ALJ noted Plaintiff's edema was significant for a brief period when he was non-complaint with medications. (*Id*.) Finally, the ALJ noted that claimant's physician, Dr. Narcisa Surucci, M.D., "opined that claimant needed 'to have disability benefits as soon as possible since he cannot afford medication.'" (R. 19.) The ALJ found this opinion not persuasive because it did not contain a function-by-function assessment of Plaintiff's impairments and limitations, and contained a legal conclusion as to disability.[3] (R. 19-20.)

In spite of those references to medication non-compliance, the ALJ fails to mention any reason(s) underlying Plaintiff's non-compliance, despite clear record indications of these reasons. For example, Plaintiff was noted for being on the medication Eliquis until his insurance coverage changed and he could no longer afford it. (R. 831.) Plaintiff also reported being out of the medication Jardiance

---

[3] In reality, the Court finds Dr. Surucci did not offer an opinion as to whether Plaintiff was disabled, but rather that he had a need for benefits due to his inability to afford medications, doctor's visits, and hospitalizations. (R 697.)

and that his insurance would not cover this medication; he explained that the medication was too expensive for him to afford. (R. 864.) Another record indicates Plaintiff could not check his blood sugar levels at home because of lack of money for testing strips. (R. 697.) Likewise, Plaintiff refused to go to the hospital due to lack of insurance. (R. 696.) Additionally, despite Dr. Surucci having an infamously hard-to-read "doctor's scrawl," the Court can determine there are multiple notations she treated Plaintiff for free due to his lack of funds. (R. 697-98, 704.) Yet the ALJ failed to evaluate any of these reasons for non-compliance, as was required of her under SSR 16-3p.

While the Commissioner argues that the ALJ referenced non-compliance with treatment at times when Plaintiff was working and insured, this is an impermissible *post hoc* argument that was not made by the ALJ. (Dkt. 20, p. 22.) *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (SSA cannot prevail on appeal on an "impermissible *post hoc* rationale"); *see also* fn. 4, *infra*. Regardless, the ALJ discussed so little of the evidence outlining why Plaintiff was noncompliant with medication, that her conclusion is "suspended over air". *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011). This is particularly true because Plaintiff's medication non-compliance was noted only sparingly throughout the record, whereas the majority of the time Plaintiff is noted for as being compliant with his medications. (*e.g.*, R. 1043, 1053, 1066, 1075.) Regardless, the record plainly shows Plaintiff could not afford his medications at various points (*i.e.*, both when he was insured and uninsured)[4] and that was something the ALJ should have considered under SSR 16-3p. (R. 536, 696-98, 704, 831, 864 ,1082.) The ALJ should not have considered Plaintiff's non-compliance as a factor contradicting his subjective complaints without either inquiring further as to the reason for his non-compliance or explaining how his inability to afford medications, treatment, and hospitalizations factored into the analysis. *See Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (claimant's non-

---

[4] The Court notes that even with health insurance, the copays and the portions of treatment a patient is ultimately responsible for themselves can be cost-prohibitive for many individuals.

compliance "should not negatively affect an individual's credibility if there are good reasons for the failure to complete the plan," and that "an ALJ may need to question the individual at the administrative proceeding to determine whether there are good reasons the individual did not seek medical treatment or fully comply with prescribed treatment").

In sum, the ALJ ignored the dictates of SSR 16-3p, which requires explanation for how Plaintiff's reasons for noncompliance were considered. Without benefit of the ALJ's analysis of how she considered Plaintiff's reasons for his non-compliance with his treatment recommendations, the Court cannot adequately trace the ALJ's path of reasoning to her conclusions in this matter. *Steele*, 290 F.3d at 941. The Court must remand on this basis.

**4.    Conclusion**

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. The Court declines to reach a decision on any other bases of error raised by the Plaintiff. Plaintiff's Motion for Summary Judgment (dkt. 14) is GRANTED and the Commissioner's motion (dkt. 19) is DENIED. The case is remanded for further proceedings consistent with this opinion.

Entered: August 23, 2022

_____
Susan E. Cox,
United States Magistrate Judge